UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 08 CR 50009 |
| | ) | |
| DOUGLAS HILL, | ) | Hon. P. Michael Mahoney |
| Defendant. | ) | |

**DEFENDANT DOUGLAS HILL'S REPLY TO THE GOVERNMENT'S
RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Now comes Defendant **DOUGLAS HILL**, by and through his attorney **PATRICK E. BOYLE**, and replies to the government's response to his motion to suppress as follows:

From the government's response, it is clear that there is some dispute between the parties as to what the relevant "facts" of this case are. A significant point is the government's contention that the female caller who made the 911 call in this case identified herself as Defendant Douglas Hill's girlfriend. However, a careful review of the transcript of the 911 call reveals that the caller only says that she is "kind of dating this guy" and that she never identifies herself by name nor does she call herself Mr. Hill's girlfriend. The 911 operator does ask the caller if the person she is talking about is her "boyfriend" and the caller says "yes." From this, the government argues that the caller should not be considered anonymous. However, this very vague identification does not take the caller out of the anonymous category. This is very different from a situation where a caller identifies themselves as a husband or wife of a subject. Such a relationship is documented by legal or official documents which could then be consulted to get an actual name of an individual. Here, even if the Court accepts that the caller

was a girlfriend of Mr. Hill that does not provide a name for her or anyway for the authorities to ascertain her identity if the information provided turns out to be false.

The government also repeatedly asserts in its response that the 911 caller claimed that she had been shot at by her pursuer and that this claim was true and verified by the police. First of all, from the 911 transcript it is not clear that the caller actually made this claim. At the beginning of the call, the caller does assert "there is this guy shooting at me" but later in the call, the caller claims that her pursuer "started just trying to shoot at me." Consequently, it is not clear if the caller is claiming that her boyfriend actually fired shots at her or threatened her with a gun. Most importantly, the police investigation in response to the 911 call and prior to their arrest of Mr. Hill revealed that there had been no shooting as the caller claimed. The police never found any spent shell casings or any other evidence that a shooting had taken place. The police did a full canvas of the area where the caller claimed the shooting took place and the police found no witnesses to a shooting or even a heated argument and pursuit. Further, there is no evidence that the recovered handgun had been recently fired or that Mr. Hill had recently fired a handgun. Finally, there were no other 911 calls made from any witnesses who heard or saw a shooting as described by the caller here. Therefore, contrary to the government's assertions, the primary allegation of the 911 caller was proven false by the police response and investigation and the falsity of the caller's claim had to be obvious to the police prior to their contact with Mr. Hill.

The government begins their legal argument against the defendant's motion to suppress by alleging that the search of the defendant was a mere <u>Terry</u> stop and not pursuant to a full arrest and search. In making this claim, government asserts that the police, with guns drawn,

ordered Mr. Hill to the ground, handcuffed him and "frisked Hill for weapons." (See, Gov.'s Response P. 2) However, the police never characterized their search of Mr. Hill as a "frisk" or a "pat-down." Instead the police acknowledge that they entered Mr Hill's property with guns drawn and demanded that he get face down on his drive-way.  The police then surrounded Mr Hill and placed him in handcuffs and went straight into his coat pockets recovering a gun.  From the police's own account it is clear that this was not a frisk or pat-down but a full custodial search.  While there is no bright line separating a Terry stop and a full custodial arrest, Mr. Hill believes that the facts here establish that his search went beyond a mere Terry stop was a full arrest and search that needed to be justified by probable cause.  Most significantly, the arrest and search of Mr. Hill took place on his own property, was done by several officers with guns drawn while Mr. Hill was handcuffed and the police's search was not a frisk but instead an immediate and intrusive search into Mr. Hill's pockets.

In asking this Court to deny Mr. Hill's motion, the government cites several cases where courts found that 911 calls provided sufficient justification for police searches.  The government first cites United States v. Wooden, 2007 WL 4224232 (N.D. Ind. 2007) where the court, following an evidentiary hearing, held that a 911 call provided the reasonable suspicion to justify a Terry stop and search.  However, in Wooden, the court emphasized the fact that the police were able to confirm certain aspects of the 911 call prior to the police's stop and search of the defendant.  Here, unlike Wooden, prior to their contact and search of Mr. Hill, the police were unable to confirm any of the significant allegations of the anonymous 911 caller.  First, the caller here claimed that she calling from behind the Family Dollar store.  The police went immediately to that location and were unable to find anyone who could have been the caller.  Second, the caller claimed that there had been a violent argument and pursuit which might have involved

numerous gunshots. The police canvassed the area and were unable to find any evidence of such a violent argument and/or shooting. If such a shooting had occurred the police would have certainly found some supporting evidence of it – either physical evidence or other witnesses. Consequently, unlike the police in <u>Wooden</u>, who prior to their contact with the defendant were able to confirm the caller's allegations, here, the police investigation could only cast doubt on the caller's claims and reliability. Further, in <u>Wooden</u>, the caller provided a physical description of the defendant including physical characteristics and dress which the police were able to observe and confirm themselves prior to the search of the defendant. Here, the caller did not provide any description which the police could have confirmed prior to their arrest and search of Mr. Hill.

The government also cites <u>United States v. Shoals</u>, 478 F.3d 850 (7th Cir. 2007) but this is a case that is easily distinguished from Mr. Hill's. While the 911 caller in <u>Shoals</u> did not provide his actual name during the call, his name, address, and telephone number was known to some of the responding police and was considered credible. The caller in <u>Shoals</u> also provided a physical description of the defendant which included his dress that the police were able to confirm prior to the search. Similarly, the government asks this Court to look to <u>United States v. Drake</u>, 456 F.3d 771 (7th Cir. 2006), another case that is easily distinguished from Mr. Hill's. Most significantly, the caller in <u>Drake</u> was not anonymous – she gave her full name and identified herself as the mother-in-law of the victim. Consequently, because the caller was not anonymous, the <u>Drake</u> court held that <u>Florida v. J.L.</u> was not controlling. <u>Drake</u>, 456 F.3d at 774. Further, the caller in <u>Drake</u> told the 911 dispatcher that the suspect was in a Cadillac and the police were able to see and confirm this fact themselves prior to the stop and search of the defendant.

In its response, the government finally attempts to distinguish the facts here from the

controlling decision of the Supreme Court in <u>Florida v. J.L.</u>, 529 U.S. 266, 120 S.Ct. 1375 (2000). First, the government is forced to argue that the caller here was not anonymous because she claimed to be Mr. Hill's girlfriend. Again, as discussed above, even if this Court concludes that the 911 transcript supports the government's "girlfriend" characterization, such a characterization does not make the caller any less anonymous. The caller does not give her name, her address, or a telephone number. There is no indication that Mr. Hill had only one "girlfriend" or that who was dating was known to the general public or the police. The government also asserts that the 911 caller here provided the police with "detailed information" that the police were able to confirm prior to the arrest and search of Mr. Hill. (<u>See</u>, government's response at p.6 citing the caller's knowledge of Mr. Hill's age and home address) However, the "detailed information" are all facts that any person could have learned from a phone book or from having merely met Mr. Hill. The caller here did not provide a physical description of Mr. Hill or his dress which the police could have confirmed or would have at least established that the caller had recently been with Mr. Hill.

  Most significantly, the crucial assertions of the caller, which according to the government made this an emergency situation unlike that in <u>Florida v. J.L.</u>, namely that Mr. Hill was chasing the caller down the street firing a handgun, were not only not confirmed by the police but were directly contradicted by everything the police's investigation discovered. The caller was not even found where she claimed to be, nor was there any woman on the scene who could have been the anonymous caller. What the police discovered was not an emergency situation but rather the exact opposite. The police found a quiet residential street where there was no evidence of a violent confrontation or a shooting. The police had time to do a full canvass of the

area and were unable to find any witnesses or physical evidence that supported the caller's allegations. Prior to their entry onto his property and their arrest and search of Mr. Hill the police did not even identify Mr. Hill as the subject of the anonymous call by asking him to identify himself.

Consequently, the Defendant Douglas Hill respectfully asks this Court to apply the facts of his case to the relevant law, specifically the Supreme Court's holding in <u>Florida v. J.L.</u>, and conduct a full evidentiary hearing into the facts of this case and at its conclusion grant his Motion to Suppress.

>Respectfully submitted,
>
>**DOUGLAS HILL**
>
>By:   s/ Patrick E. Boyle
>      By his attorney Patrick E. Boyle

Law Offices of Patrick E. Boyle
**PATRICK E. BOYLE**
155 N. Michigan Ave., Suite 562
Chicago, IL 60601
(312) 565-2888

**CERTIFICATE OF SERVICE**

      The undersigned Attorney certifies that the following Motion to Continue Sentencing was served on **Monday, June 30, 2008**, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

                                            By:    s/ Patrick E. Boyle
                                                        PATRICK E. BOYLE

Law Offices of Patrick E. Boyle
**PATRICK E. BOYLE**
155 N. Michigan Ave., Suite 562
Chicago, IL 60601
(312) 565-2888